UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joseph Anthony Favors,                          Case No. 0:24-cv-3063 (KMM/TNL)

            Plaintiff,

v.
                                                                    **ORDER**
Synchrony Bank,

            Defendant.

---

Plaintiff Joseph Anthony Favors brings this action against Defendant Synchrony Bank ("Synchrony"), alleging that Synchrony violated his rights under federal and state law as it relates to the reduction of his credit limit. ECF No. 1. Mr. Favors asserts federal claims under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* ("ECOA"), Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA"), Fair Credit Billing Act, 15 U.S.C. §§ 1666, *et seq.* ("FCBA"), a state law breach-of-contract claim, and a claim under the Minnesota Human Rights Act, Minn. Stat. § 363A.28, subd. 3. ("MHRA").

This matter is before the Court on Synchrony's Motion to Dismiss, ECF No. 4, and Mr. Favors' Partial Motions for Summary Judgment, ECF Nos. 19, 25. For the reasons addressed below, Synchrony's Motion to Dismiss is **GRANTED in part and DENIED in part**, and Mr. Favors's Motions for Partial Summary Judgment are **DENIED**.

## I.    BACKGROUND

On about May 18, 2023, Mr. Favors filed a Letter Dispute with Synchrony. ECF No. 1-1 at 22. In the letter, Mr. Favors indicated that Synchrony reduced his credit limit

from $1,800 to $1,050. *Id.* According to Mr. Favors, Synchrony never provided any legitimate oral or written explanation for the adverse action to his credit card ending in #7336. *Id.* Within a single billing cycle after Mr. Favors filed the letter disputing his reduced credit limit, Mr. Favors noticed that Synchrony reduced his available credit to a permanent $0.00. This was so, despite Mr. Favors never having missed a payment and owing less than $850.00 on the account. *Id.* at 23. Mr. Favors alleges that Synchrony reduced his available credit in retaliation for his dispute letter. *Id.* Mr. Favors never received a response to his letter. *Id.* Mr. Favors then filed a second dispute letter regarding his permanently reduced credit, but never received a response to the subsequent letter either. *Id.* at 24.

Mr. Favors alleges that, Synchrony's actions caused him to lose the purchasing power of a $1,800 credit for emergencies, and the ability to purchase necessities for his music studio. *Id.* at 11–12. Mr. Favors also alleges he has suffered mental and emotional distress, pain and suffering of embarrassment, humiliation, irritability, anger, migraine headaches, and anxiety. *Id.* at 12.

## II.    PROCEDURAL HISTORY

Mr. Favors brought this action against Synchrony in the Nicollet County District Court, a Minnesota State Court, on June 11, 2024. ECF No. 1 at 1. Synchrony removed the case to the District of Minnesota on July 31, 2024, on grounds of both diversity and federal-question jurisdiction. ECF No. 1 at 3. In its motion to dismiss, Synchrony asserts that Mr. Favors fails to state a claim upon which relief can be granted. ECF No. 4. And Mr. Favors's filed two motions for partial summary judgment. ECF Nos. 19, 25.

## DISCUSSION

### I.    Legal Standard

To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations that raise only a speculative right to relief are insufficient. *Twombly*, 550 U.S. at 555. A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). But legal conclusions couched as factual allegations are not given the same deference. *Twombly*, 550 U.S. at 555. And mere "labels and conclusions" as well as a "formulaic recitation of the elements of a cause of action" are not enough to state a claim for relief. *Id.*

Although courts construe a *pro se* plaintiff's complaint liberally, the complaint must allege sufficient facts to support the plaintiff's claims. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). And "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam); *see also Stone*, 364 F.3d at 914 (applying a "general rule" of waiver to a *pro se* party).

### II.    Analysis

#### A.  Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA")

Under the ECOA, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because the applicant has in good faith exercised any right under [the Consumer Credit Protection Act]." 15 U.S.C.

§ 1691(a)(3). Favors has brought a claim under the ECOA asserting that Synchrony retaliated against him by lowering his credit limit and ultimately closing his account after receiving his dispute letters.

The Eleventh Circuit has provided guidelines on how to establish a prima facie case for retaliation under the ECOA, which another judge in this district has previously adopted. *See Favors v. Synchrony Bank*, No. 21-cv-2473 (JRT/TNL), 2022 WL 4803094, at *2 (D. Minn. Sept. 30, 2022) (also adopting the Eleventh Circuit test). "Plaintiffs must show that they '(1) exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against [them] with respect to the credit transaction.'" *Id.* (quoting *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1335 (11th Cir. 2000)). "To establish the discrimination element, a plaintiff must show either 'that the creditor refused to extend credit to the applicant or that it extended credit but on less favorable terms.'" *Id.* (quoting *Bowen*, 233 F.3d at 1336).

Taking the facts alleged in the Complaint as true, Mr. Favors has sufficiently pled an ECOA retaliation claim. Mr. Favors alleges that Synchrony reduced the credit limit on his account to zero in response to his letter complaining about a prior reduction in credit. Synchrony argues that Mr. Favors failed to establish that it took action against him as a result of him exercising a right, and with respect to the credit transaction, that he did not allege he was making payments on his account. However, at this stage of litigation, the Court is tasked with evaluating the sufficiency of Mr. Favors's allegations, not Synchrony's version of events, nor the evidence supporting Mr. Favors' claim. Each of these aspects of an ECOA claim is adequately alleged in the Complaint.

Additionally, Synchrony argues that, since Mr. Favors is an existing account holder, he is not considered an "applicant" under the ECOA. However, the ECOA protects applicants and existing account holders. Not only does Synchrony fail to cite authority for its argument, the relevant regulatory definition of the term "applicant" includes "*any person* who requests or who has received an extension of credit from a creditor," 12 C.F.R. § 202.2(e) (emphasis added), which does not exclude existing account holders. *See also Powell v. Pentagon Fed. Credit Union*, No. 10-cv-785, 2010 WL 3732195, at *4–5 (N.D. Ill. Sept. 17, 2010) (finding plaintiff, who already had a credit account, qualified as an "applicant" under the ECOA's regulation definition as he "received an extension of credit from a creditor"). Consequently, the fact that Mr. Favors already had an account with Synchrony when he alleges the bank discriminated against him in a credit transaction does not cause his ECOA claim to fail as a matter of law. *Powell*, 2010 WL 3732195, at *4.

For these reasons, the Court denies Synchrony's motion to dismiss the ECOA claim.

**B. Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA")**

Mr. Favors also alleges that Synchrony violated the FCRA, and again Synchrony moves to dismiss this claim. Among other things, the FCRA requires companies that provide information to credit reporting agencies ("CRA") to ensure that information is accurate and to investigate consumers' disputes regarding the information furnishers give to the CRAs. *See Favors*, 2022 WL 4803094, at *3. Data furnishers are prohibited from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Johnson v. Freedom Mortgage Corp.*, 21-cv-2760 (KMM/ECW), 2024 WL 3625289, at *4

(D. Minn. Aug. 1, 2024) (quoting 15 U.S.C. § 1681s-2(a), alteration in *Johnson*). "15 U.S.C. § 1681m requires that users who take an adverse action based upon information provided in consumer reports must provide notice of the adverse action to the consumer." *Favors*, 2022 WL 4803094, at *3.

The Court finds Mr. Favors fails to state a claim under the FCRA. In his Complaint, he merely asserts that Synchrony violated the FCRA, but does not explain how Synchrony did so. He does not allege that Synchrony received notice of a dispute from a CRA, that he lodged a dispute with a CRA, that Synchrony failed to undertake an investigation in response to any dispute, or that any investigation did not comply with the procedures set forth under the FCRA. *Favors*, 2022 WL 4803094, at *3. Therefore, Synchrony's motion is granted in this respect.

### C. Fair Credit Billing Act, 15 U.S.C. §§ 1666, *et seq.* ("FCBA")

Mr. Favors alleges that Synchrony violated the FCBA, codified at 15 U.S.C. § 1666, by failing to provide him with any explanation for his reduced credit line. Synchrony asserts that Mr. Favors does not have a viable FCBA claim because his letters do not constitute a billing error dispute that would trigger the duty to provide a written explanation.

A creditor is required to take action under the FCBA only after receipt of a written notice of a billing dispute. 15 U.S.C. § 1666(a). Such a notice triggers those requirements when it:

> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

6

(2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and

(3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error.

15 U.S.C. § 1666(a)(1), (2), and (3); *see also Conn-Burnstein v. Saks Fifth Ave. & Co.*, 85 Fed. App'x 430, 431 (6th Cir. 2003) (per curiam) (citing 12 C.F.R. § 226.13(b) and explaining that the notice must "identify[] the obligor by name and account number" and state the consumer's reasons for believing there is a billing error along with "the type, date, and amount of the error").

Not "every letter submitted by a debtor qualifies as a billing error notice. . . . The written notice must point out some perceived problem with a statement that meets the statutory definition of billing error." *Esquibel v. Chase Manhattan Bank USA, Inc.*, 487 F. Supp. 2d 818, 827 (S.D. Tex. 2007). The FCBA defines a "billing error" as follows:

(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Bureau.

15 U.S.C. § 1666(b); *see also Cunningham v. Bank One*, 487 F. Supp. 2d 1189, 1192 (W.D. Wash. 2007) (discussing billing error disputes covered by the FCBA). Failure to allege "that there was a 'billing error' in any of [the plaintiff's] bills" supports dismissal of an FCBA claim under Rule 12(b)(6). *Hayes v. Shelby Cnty. Tr.*, 971 F. Supp. 2d 717 (W.D. Tenn. 2013); *see also Favors v. Chase Bank*, No. 18-cv-3303 (JNE/LIB), 2019 WL 13219549, at *7 (D. Minn. Sept. 18, 2019).

To plausibly assert a claim under this "billing error" provision of the FCBA, as Mr. Favors seeks to do in Count 4 of his Complaint, he must allege that he sent Synchrony a written notice that satisfies the specific requirements of 15 U.S.C. § 1666(a). *Cunningham*, 487 F. Supp. 2d at 1191 ("To succeed on a claim under 15 U.S.C. § 1666, plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the [creditor] to comply with the procedural requirements of Section 1666."); *Schwanke v. Barclays Bank of Del.*, No. 10-cv-4547 (DWF/LIB), 2010 WL 5211558, at *1 (D. Minn. Dec. 1, 2010) (citing *Esquibel v. Chase Manhattan Bank USA, Inc.*, 276 Fed. App'x 393, 396 (5th Cir. 2008) (unpublished opinion)), *report and recommendation adopted by* 2010 WL 5211557 (D. Minn. Dec. 16, 2010). A review of the Complaint demonstrates that Mr. Favors has failed to do so.

Mr. Favors alleges he sent two written correspondences to Synchrony. First, Plaintiff sent a March 25, 2018, "Request for Validation of Reduced Credit Limit" letter, which reads as follows:

> This letter is regarding account #6034-5900-9115-7336, which you reduced my credit limit to "$1,150.00," from "$1,800.00." This is a formal notice that your credit line reduction is disputed.
>
> I am requesting validation, made pursuant to the Equal Credit Opportunity Act and the verbal Agreement to re-open my credit line with Synchrony Bank, which was a credit line of $1,800. In good faith I took your lawyer's word, and Synchrony Bank made good on that Agreement, but now you have reneged by reducing my credit line about $650.00. I Settled out of Court with your attorney in good faith that my credit line would be re- instated. First you re-instated it at a reduced $1,800.00 down from $3,400.00; now you have dropped my credit line a huge amount again. My credit report is much better now than it was when Synchrony Bank gave me the $3,400 credit line. And, my current monthly payments are set up for auto-pay.
>
> Please note that I am requesting "validation" that is <u>competent</u> evidence showing that my Credit Agency Score or information is worse now, than it was when I was approved for the $3,400.00 line of credit. If that evidence is not produced, the reduction is not based on information in my credit agency records, apparently!

Disp. Letter, ECF No. 15 at 1. Mr. Favors alleges that Synchrony failed to respond to this written notice. Many months later, Mr. Favors sent Synchrony another letter that similarly complained about the reduction of his credit limit with Synchrony that also went without a response. These letters provide part of the required detail for a written notice to a creditor under the FCBA because they include Mr. Favors' name, his account number, and a statement indicating that he believes there is a problem. But to qualify as a proper written

notice under 15 U.S.C. § 1666(a), the notice must also indicate Mr. Favors's belief that the statement he received from Synchrony contains a "billing error" as that term is defined by the FCBA. He fails to establish this prong. Mr. Favors's letters to Synchrony refer to the bank's adverse action—the reduction of his credit from $1,800 to $1,150 then ultimately to $0. But they do not identify any "billing error."

Mr. Favors fails to state a claim for a violation of the FCBA because he has not alleged that he gave Synchrony notice of any "billing error" that would trigger Synchrony's obligation to respond under the statute. This is so for at least two reasons. First, the Court notes that in his letters to Synchrony, Mr. Favors makes multiple references to making a "request for validation." However, to the extent Mr. Favors claims that a validation request constitutes a complaint about a "billing error," courts have found that validation requests do not fit the statutory definition of that term. *See Hill v. Chase Bank USA, N.A.*, No. 2:07-cv-82 (RM), 2010 WL 107192, at *6 (N.D. Ind. Jan. 6, 2010) (determining that, in accordance with § 1666, a request for validation of a full debt is not a "billing error."). Second, even if he had used the term "billing error," his letter does not actually complain of one. As noted above, under § 1666(b) there are seven subparagraphs that detail the issues a borrower may have with a creditor's statement of the borrower's account that constitute actionable FCBA billing errors. 15 U.S.C. § 1666(b)(1)–(7). For example, these subparts refer to situations where the statement indicates that the creditor has extended credit, but that credit was not extended to the borrower. 15 U.S.C. § 1666(b)(1). Other examples of billing errors include a creditor's statement of the account that fails to reflect a payment made by or a credit issued to the borrower or computation or similar errors of an accounting

10

nature. 15 U.S.C. § 1666(b)(4)–(5). Unfortunately for Mr. Favors, Synchrony's alleged decision to reduce his credit limit does not fit these or any of the other subparts of the statutory definition.

Because Mr. Favors has failed to allege sufficient facts demonstrating that he provided Synchrony with a written notice of a "billing error," he has failed to plausibly allege that Synchrony had any statutory obligation to respond according to the FCBA. *See Neiman v. Chase Bank, USA, N.A.*, No. 13-cv-8944, 2014 WL 3705345, at *3 (N.D. Ill. July 25, 2014) ("In order to trigger the creditor's statutory duties under 1666(a), the obligor must send the creditor 'a written notice' of the alleged billing error" as that term is defined by the FCBA). Accordingly, the Court grants Synchrony's motion to dismiss Mr. Favors's FCBA claim.

### D.  Minnesota Human Rights Act, Minn. Stat. § 363A.15 ("MHRA")

The Human Rights Act requires individuals to identify the practices that they allege to be discriminatory in the charging documents they file with the Minnesota Department of Human Rights. *See* Minn. Stat. § 363A.28, subd. 1. Any charge filed with the Department must contain "a clear and concise statement of the facts that . . . may constitute the alleged unfair discriminatory practice," Minn. R. 5000.0400, subp. 1C, to inform the scope of the Department's investigation and put the respondent on notice of the nature of the allegations against it. An "[u]nfair discriminatory practice" is "any act described in sections 363A.08 to 363A.19 and 363A.28, subdivision 10." Minn. Stat. § 363A.03, subd. 48; *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 68–69 (Minn. 2020). Any separate unfair discriminatory

practice must be identified and detailed separately in any charge of discrimination filed with the commissioner. *See* Minn. Stat. § 363A.28, subd. 1.

There are two problems with Mr. Favors's MHRA claim. First, he fails to explain what was discriminatory about Synchrony's conduct. Mr. Favors fails to identify the discriminatory practice at issue, as required, and dismissal is required for that reason alone. But even if Mr. Favors had specifically articulated a claim under the MHRA, it is plain from the face of the Complaint that the statute of limitations had passed when he filed his Complaint.

Here, Mr. Favors alleges that Synchrony violated Minn. Stat. § 363A.15 of the MHRA when it reduced his credit limit to $0.00. He asserts that Synchrony did so in response to his first dispute letter, and that the reduction purportedly happened shortly before he sent his letter dated May 18, 2023 to Synchrony, disputing the reduction. The Court must consider whether the charge was filed or the civil action was brought "within one year after the occurrence of the practice." Minn. Stat. § 363A.28, subd. 3(a). Mr. Favors filed his civil complaint on June 11, 2024 in the Court of District Court, County of Nicollet, State of Minnesota. ECF No. 1. Even using the date Mr. Favors wrote to Synchrony about the reduction, the statute of limitations expired on May 18, 2024.[1] As such, Mr. Favors fails to state a claim as it relates to any alleged violation of the MHRA occurred on behalf of Synchrony.

---

[1] Mr. Favors argues that a second letter he sent in February of 2024 actually started the clock for the statute of limitations. But the claims in the Complaint are about the initial reduction, not the much later letter. Mr. Favors cites no authority for the idea that a much later letter restating the claim changes this calculus.

### E.  Breach of Contract

Finally, Mr. Favors brings a state law breach-of-contract claim against Synchrony. "A plaintiff alleging a claim for breach of contract must plead, among other things, (1) the existence of a contract between the plaintiff and the defendant and (2) the defendant's breach of one of the contract's terms." *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1012 (D. Minn. 2008).

Mr. Favors's Complaint is void of any allegation identifying a contract with Synchrony. While his briefing cites law about agreements and contracts, Mr. Favors does not allege the existence of a contract in this case. Assuming that Mr. Favors is referring to the cardholder agreement between Synchrony and himself, Mr. Favors does not allege any specific facts to support any assertion that Synchrony breached that contract. Consequently, the Court finds that he has failed to state a breach-of-contract claim and that claim is dismissed.

### III.    Mr. Favors's Motions for Partial Summary Judgment

The Court has reviewed Mr. Favors's pending motions for partial summary judgment. ECF Nos. 19, 25. The motions are denied. Partial summary judgment is premature as to the one remaining claim in this case for violation of the ECOA, and denied as to the dismissed counts.

### CONCLUSION

In light of the foregoing, the Court **GRANTS in part and DENIES in part** Synchrony's Motion to Dismiss. ECF No. 4. Mr. Favors's Motions for Partial Summary Judgment are **DENIED.** ECF Nos. 19, 25.

**IT IS SO ORDERED.**

Date: March 19, 2025                    *s/Katherine Menendez*
                                        Katherine Menendez
                                        United States District Judge